KENNETH G. EADE (SBN 93774)
keneade@gmail.com
LAW OFFICE OF KENNETH G. EADE
6399 Wilshire Blvd., Suite 507
Los Angeles, CA 90048
Telephone: 323-782-8802
Facsimile: 323-704-3539

Attorney for Plaintiff
ZIRK DE MAISON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| ZIRK DE MAISON,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD BERMAN, an individual, DOMINICK D'ALLEVA, an individual, AMERICAN REGISTRAR AND TRANSFER CO., a Utah corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. EDCV 13-1165 JGB (DTBx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF ZIRK DE MAISON; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 29, 2013<br>Time: 9:00 a.m.<br>Courtroom: 1, Riverside<br>Judge: Hon. Jesus G. Bernal |

- i -

# TABLE OF CONTENTS

<u>Page No.</u>

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ..........................................................................iii

DECLARATION OF ZIRK DE MAISON .......................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................8

I. INTRODUCTION .......................................................................................8

II. GOOD CAUSE EXISTS FOR ISSUING A PRELIMINARY INJUNCTION.............8

A.    LIKELIHOOD OF SUCCESS ON THE MERITS. ...................................9

       1.    Securities Fraud............................................................10

       2.    Declaratory Relief.........................................................12

       3.    Rescission and Restitution .............................................13

       4.    Restrictions May Not Be Removed from the Shares.........................15

B.    LIKELIHOOD TO SUFFER IRREPARABLE HARM. ..........................17

C.    BALANCE OF EQUITIES AND THE PUBLIC INTEREST. ...............19

III. CONCLUSION ........................................................................................20

PLTF'S MOTION FOR PRELIM INJUNCTION

# TABLE OF AUTHORITIES

<u>Page No.</u>

**Cases**

*Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972)..............................12

*Alabama Farm Bureau Mut. Cas.Co. v. American Fidelity Life Ins. Co.,*
   606 F.2d 602 (5th Cir. 1979) ...........................................................................18

*Alliance for the Wild Rockies v. Cattrell,* 632 F.3d 1127 (9th Cir. 2011) .....................9, 17

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) .....................................................10

*Binder v. Gillespie,* 184 F.3d 1059 (1999) ........................................................12

*Blackie v. Barrack,* 524 F.2d 891 (Ninth Cir. 1975) ...............................................12

*California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*,
   766 F.2d 1308 (9th Cir.1985) ...........................................................................17

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ...................................10

*Elvis Presley Enterprises, Inc. v. Passport Video,* 349 F.3d 622 (9th Cir. 2003) ...............9

*Estate of Ferdinand Marcos Human Rights Litigation,*
   25 F.3d 1467 (Ninth Cir. 1994) ........................................................................19

*Gebhart v. SEC*, 559 F.3d 1034 (Ninth Cir. 2010) ...............................................11

*Golden Gate Restaurant v. City and County of San Francisco,*
   512 F.3d 1112 (Ninth Cir. 2008) ........................................................................9

*In re Estate of Joslyn*, 500 F.2d 382 (Ninth Cir. 1974) ........................................18

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011) ...............10

Jayaraj v. Scappini, 66 F.3d 36 (2d Cir. 1995) ...................................................17

*Kenler v. Canal National Bank,* 489 F.2d 482 (1st Cir. 1973)...................................17

*Levine v. Diamanthuset, Inc.*, 950 F.2d 1478 (9th Cir.1991) .................................12

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. (2011)........................................10

*Miller v. Thane Intern., Inc.,* 519 F.3d 879 (9th Cir. 2007)......................................18

Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782 (9th Cir. 2005).........17

*Orkin v. SEC*, 31 F.3d 1056 (11th Cir. 1994) .....................................................18

Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez,

    606 F.Supp.2d 1195 (E.D. Cal. 2008) ..................................................17

*Sackett v. Beaman,* 399 F.2d 884 (Ninth Cir. 1968) ...................................12

*Salazar v. Bruno,* _____ U.S._____, 130 S. Ct. 1803, 176 L. Ed 2d 634 (2010) ...............9

*SEC v. Guild Films Co.*, 229 F.2d 485 (2nd Cir. 1960) ...............................19

*SEC v. Kern*, 425 F.3d 143 (2nd Cir. 2005) .................................................16

*SEC v. Platforms Int. Wireless Corp.,* 617 F.3d 1072 (Ninth Cir. 2010) ...................15, 16

*SEC v. Rind,* 991 F.2d 1486 (1993) ............................................................20

*SEC v. Todd*, 642 F.3d 1207 (2011) ...........................................................10

*Sherr v. Commissioner*, 10 T.C.M. (CCH) 671 (USTC 1951) ....................18

*Smartano v. First Judicial District Court,* 303 F.3d 959 (9th Cir. 2002)...........................9

The *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017 (9th Cir.1999) ...............12

*Toyo Tire Holdings of Ams. Inc. v. Continental Tire N. Am., Inc.,*

    609 F.3d 975 (9th Cir. 2010) ...............................................................9

*U.S. Phillips Corp. v. KBC Bank N.V.*, 590 F.3d 1091 (Ninth Cir. 2010).........................8

*Winter v. Natural Res. Def. Council,* 555 U.S. 7 (2008) ..............................9

**Statutes**

15 U.S.C. §78b.........................................................................................20

28 U.S.C. Section 2201(a) ......................................................................12

CA Civil § 1572 .....................................................................................14

CA Civil § 1573 .....................................................................................14

CA Civil § 1689(b)(2).............................................................................14

CA Civil § 1689(b)(3).............................................................................14

CA Civil § 1689(b)(4).............................................................................14

TO:   DEFENDANTS RICHARD BERMAN, DOMINICK D'ALLEVA and AMERICAN REGISTRAR AND TRANSFER CO., AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Monday, July 29, 2013, at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of this Court, located at 3470 Twelfth Street, Riverside, CA 92501, Plaintiff, ZIRK DE MAISON, will move this Court for a preliminary injunction, enjoining and restraining Defendants and all those acting in concert with them, from doing the following, during the pendency of this action:

   a.   From removing restrictive legends on LUSTROS common stock certificate 4392 for 1 million shares, representing the Shares of common stock held by DOMINICK D'ALLEVA.

   b.   From selling or transferring any of the Shares represented by certificate 4392, representing the Shares of common stock held by Defendant DOMINICK D'ALLEVA.

The Motion will be based on this Notice of Motion, the attached declarations of Zirk de Maison, the Memorandum of Points and Authorities, and such other and further evidence as may be presented at the hearing.

DATED:  July 2, 2013

Respectfully submitted,


   _/s/ Kenneth G. Eade_____
   KENNETH G. EADE (SBN 93774),
   Attorney for Plaintiff,
   ZIRK DE MAISON

PLTF'S MOTION FOR PRELIM INJUNCTION

### DECLARATION OF ZIRK DE MAISON

I, ZIRK DE MAISON, hereby declare as follows:

1.      That I am an individual over the age of 18, the Plaintiff in this action, and a director of LUSTROS, INC.  If called upon as a witness, I could competently testify as to the following facts, within my personal knowledge.

2.      At all times hereinmentioned, Defendant BERMAN, as a director of LUSTROS, owed a fiduciary duty to LUSTROS and to all of the directors of LUSTROS, including myself, to disclose all material facts that an investor would deem to be material in the transfer of the shares from myself to BERMAN.

3.      On or about August 8, 2013, in the United States of America, in a series of telephone conversations, BERMAN represented and promised to me that, if granted 1 million shares of LUSTROS common stock (the "Shares"), he would raise up to $10 Million for LUSTROS.  On August 8, 2013, he further represented and promised to me in an email that he would not sell the Shares until such time as a genuine market had been established for LUSTROS.  A copy of that email is attached hereto and incorporated by reference herein as Exhibit 1.

4.      From August 8, 2013, to the present time, LUSTROS common stock has had a volatile market that trades by appointment only on the over the counter market, and any influx of free trading shares would destroy this market and ruin the Company's efforts for capital financing.  The above-referenced representations made by BERMAN were false. The true facts were that BERMAN could not and did not intend to raise up to $10 Million for LUSTROS, did not intend to hold the Shares until a genuine market developed, and secretly intended to dispose of the Shares as soon as he got them for a quick profit.

5.      In reliance upon Defendant's false representations and omissions as hereinabove set forth and in consideration of the promises made by BERMAN, I transferred the Shares to BERMAN.  The false representations and omissions were material because, if I had known that Defendant had no intention to raise money for

- 2 -

1  LUSTROS, and no intention to hold the Shares until a genuine market developed, I

2  would have never transferred the Shares, because to do so would only result in an

3  increase in supply of free trading stock which would make for a more volatile market for

4  LUSTROS common stock and because consideration would have completely failed for

5  the transfer.

6        6.      Unbeknownst to me, BERMAN was desperate for cash.  On or about

7  August 8, 2012, shortly after receiving the certificate for the Shares, BERMAN

8  forwarded me an email from a broker that indicated that he could borrow about $550,000

9  using the Shares as collateral in a stock loan.  I objected to this and replied that this

10 would kill financing opportunities for LUSTROS and that the lender would hedge its

11 position and require someone to buy up $700,000 of stock in the market to keep the price

12 from falling.  A true copy of the email is attached hereto and incorporated by reference

13 herein as Exhibit 2.  I realize now, using hindsight, that selling the Shares was

14 BERMAN's true intention.

15       7.      On September 10, 2012, I received an email from BERMAN that he was so

16 pressed for cash that he was facing eviction and his daughter was facing expulsion from

17 her private school.  A copy of said email is attached hereto and incorporated by reference

18 herein as Exhibit 3.

19       8.      In March 2013, BERMAN arranged a potential financing deal of $2 Million,

20 and for that he was compensated with an all expense paid vacation, paid for by myself,

21 and a promise of LUSTROS to pay him $300,000 on the closing of the financing deal.  I

22 later found out that BERMAN, although not able to close the financing deal, made a deal

23 for himself with the financier to sell his Shares.  I objected to the sale as against the

24 promise he made, and he was able to recover the share certificate.

25       9.      I am informed and believe that BERMAN has now sold the Shares outright

26 to Defendant D'ALLEVA, whom, I am informed and believe knows that BERMAN is a

27 director of the Company, knows that the Shares are restricted, and knows that BERMAN

28

did not pay consideration for the Shares, and who has attempted through the transfer agent to have the certificate issued to him without restrictive legends on the certificate representing the Shares.

10. BERMAN transferred the certificate representing the Shares to Defendant DOMINICK D'ALLEVA on June 10, 2013, who now holds the Shares in his name, represented by certificate 4391, and I anticipate that Mr. D'ALLEVA will again be asking the transfer agent to remove the restrictive legends on the certificate to deposit the Shares into his brokerage account and sell them on the open market. Since BERMAN is a director of LUSTROS, these Shares are restricted, and his transfer of them without registration violates Section 5 of the Securities Act of 1933. I directed an email to BERMAN on June 5, 2013, documenting the impropriety of this transaction, his former attempts to sell the Shares, and requesting his resignation as a member of the board of directors of LUSTROS. A true copy of the email is attached hereto and incorporated by reference herein as Exhibit 4.

11. BERMAN has never raised any money for LUSTROS, despite my having paid over $30,000 for a vacation for BERMAN and his wife and a first class trip to Chile to visit LUSTROS' properties. In short, all BERMAN has done since receiving the Shares is attempt to sell them, in violation of his representations and promises.

12. On June 7, 2013, I directed my attorney to give notice of rescission of the transfer of the Shares based upon fraud and failure of consideration. A copy of the notice is attached hereto and incorporated by reference herein as Exhibit 5.

13. BERMAN has attempted on several occasions to transfer the shares and have the legends removed from them. On these occasions, I protested to ARTCO and the transfer was not allowed. The last transfer to D'ALLEVA was requested to be made without legend, but ARTCO imposed a legend on the certificates representing the Shares. I am informed and believe that the defendants will attempt to seek removal of the legends, this time armed with an attorney's opinion claiming an exemption from

registration.   D'LLEVA is acting as Berman's underwriter for the sale of the Shares, which is contrary to the United States securities laws, because the Shares are not registered, and because D'ALLEVA is not a registered broker.

14.   The common stock of LUSTROS is very thinly traded, does not trade on a daily basis, and there is a lack of supply of free trading stock in the market.   Unless enjoined and restrained from removing the legends from the certificates representing the Shares and selling the Shares, the Defendants will sell all or a substantial portion of the Shares into the market, which will collapse the market for LUSTROS common stock, and I would suffer irreparable injury of not only the total loss of the 1 million shares, but the immediate devaluation of all my stock, which could possibly be rendered worthless. Since BERMAN is so desperate for cash, there is no way that I could ever be compensated for this loss.   In addition, LUSTROS owes me over $1 Million in advances and loans, and the crippling of its stock would make it impossible for LUSTROS to repay me.   By his one selfish and desperate act, BERMAN would ruin the Company, my investment in it, and any hope of my being paid back.   Any money judgment I receive against him for this fraud would be worthless.   In addition, this would result in LUSTROS becoming unable to raise any capital to keep its business operating and the inability of LUSTROS to pay its accountants and auditors to file its quarterly and annual reports with the Securities and Exchange Commission, resulting in a total loss of value of mine and other shareholders' investments in LUSTROS.

15.   I have no adequate remedy at law for the injuries currently being suffered and will suffer irreparable and permanent injury in that, unless Defendants are enjoined and restrained from selling the Shares, LUSTROS' market would be permanently crippled and it will lose its ability to raise capital, become delinquent in its filings with the Securities and Exchange Commission, subjecting it to revocation of its registration under Section 12g of the Securities Exchange Act of 1934 and the loss of its stock quotation, which requires LUSTROS' reports to be current to maintain a quotation.   This

will result in a total loss of market value of LUSTROS shares and an unjust windfall to the Defendants.  Further, since Defendant BERMAN is in such dire financial straits, any money judgment I may obtain against him in this case will be ineffectual.  Moreover, the equitable remedy for restitution is the return of the stock.

16.   BERMAN has also failed to disclose his ownership of the Shares pursuant to Section 16(b) of the Securities Act, which requires directors, such as myself, to file reports with the SEC disclosing their initial acquisition of an equity position in LUSTROS and any change in that position.  BERMAN has failed to file a Form 3 to disclose his share ownership in the Company and has failed to file a Form 4 disclosing his transfer of the Shares to another party.

I declare under penalty of perjury under the laws of the United States of America that all of the foregoing is true and correct this 19th day of June, 2013.


_____ /s/ Zirk de Maison_____
ZIRK DE MAISON

### DECLARATION OF KENNETH G. EADE

I, KENNETH G. EADE, hereby declare as follows:

1.      That I am an attorney at law duly licensed to practice before this Court and I am the attorney for Plaintiff herein.

2.      If called upon as a witness, I could competently testify as to the following facts under my personal knowledge.

3.      On July 2, 2013, in compliance with Local Rule 7-3, I called and directed letters and emails to Defendants, to meet and confer with them, advising that I would be filing the within motion.  I also caused a copy of the motion to be served upon them by U.S. mail and email.  I do not have the names, addresses, telephone numbers, and email addresses for Defense counsel for Defendants BERMAN and D'ALLEVA.  The names, addresses, telephone numbers and email addresses for BERMAN and D'ALLEVA are:

   a.      Richard Berman, 420 Lexington Avenue, Suite 350, New York, NY 10170;    Tel:    212-584-4180;    fax:    646-514-7787;    email: richardjberman@gmail.com.

   b.      Dominick D'Alleva, 845 United Nations Plaza, Apt. 48E, New York, NY  10017; Tel: 212-529-7999; email: info@swaylounge.com.

The names, addresses, telephone numbers, and email addresses for Defense counsel for ARTCO is:

   c.      Daniel Jackson, Attorney for ARTCO:  2157 Lincoln Street, Salt Lake City, UT  84106; Tel. 801-596-8338; email:  djackson@danjacksonlaw.com.

I declare under penalty of perjury under the laws of the United States of America that all of the foregoing is true and correct this 2nd day of July, 2013.


        _/s/ Kenneth Eade_____
        KENNETH G. EADE (SBN 93774)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant RICHARD BERMAN worked hard for the 1 million Shares he received from the Plaintiff.  Berman gave his word to the Plaintiff that he would raise $10 Million in capital for LUSTROS, INC.  He gave his word that he would not sell the Shares into the present volatile and non-genuine market.  Based on this word, which Plaintiff considered to be "better than gold," Plaintiff transferred 1 million shares of LUSTROS common stock to BERMAN.  But all of his "words" turned out to be lies.  Then came the work.  Instead of obtaining financing for the Company, BERMAN worked almost exclusively on selling the Shares that he promised not to sell into the Company's volatile market.

BERMAN, a director of the Company, not only failed to disclose his ownership of the Shares, pursuant to Section 16(b) of the Securities and Exchange Act, but he has also leveraged the Shares for a stockholder loan, and transferred them outright, also without filing the necessary disclosures with the SEC.  Not only do his broken promises constitute the complete failure of consideration for the transfer, he has, moreover, received the Shares by an outright fraud on the Plaintiff, and now has transferred the Shares to Defendant DOMINICK D'ALLEVA, who is acting as an illegal underwriter to sell the Shares into the open market without registration or any recognized exemption therefrom.

## II.   GOOD CAUSE EXISTS FOR ISSUING A PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions.  The purpose of such injunctive relief is to preserve the rights and relative positions of the parties (the status quo) until a final judgment issues.  *U.S. Phillips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (Ninth Cir. 2010).  In considering injunctive

- 8 -

relief, the Court should take into account all circumstances that bear on the need for injunctive relief. *Salazar v. Bruno,* _____ U.S._____, 130 S. Ct. 1803, 1816, 176 L. Ed 2d 634 (2010).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008). A plaintiff seeking injunctive relief must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Continental Tire N. Am., Inc.,* 609 F.3d 975 (9th Cir. 2010).

A preliminary injunction should be granted if the foregoing factors are present. *Elvis Presley Enterprises, Inc. v. Passport Video,* 349 F.3d 622, 627 (9th Cir. 2003). *Smartano v. First Judicial District Court,* 303 F.3d 959, 965 (9th Cir. 2002).

## A.    LIKELIHOOD OF SUCCESS ON THE MERITS.

The Ninth Circuit has a "sliding scale" in determining whether to grant injunctive relief. The more that Plaintiff can show the likelihood of irreparable injury, the less the Plaintiff has to show likelihood of success on the merits, and vice-versa. *Alliance for the Wild Rockies v. Cattrell,* 632 F.3d 1127 (9th Cir. 2011). Under the Ninth Circuit standard, if the party seeking relief raises "serious questions" going to the merits to make them a fair ground for litigation and the balance of hardships tips decidedly toward the requesting party, a likelihood on the merits has been established. *Id.*

The more that Plaintiff can show the likelihood of irreparable injury, the less the Plaintiff has to show likelihood of success on the merits. *Golden Gate Restaurant v. City and County of San Francisco,* 512 F.3d 1112, 1115 (Ninth Cir. 2008). On the other side of the continuum, if the balance of hardships tips decidedly toward the requesting party, a relatively lower standard of likelihood of success on the merits is required.

In this case, the Plaintiff has predicated his complaint on a private right of action under Securities and Exchange Act Section 10(b) and Rule 10b-5 promulgated thereunder, and rescission.  Section 10(b) and Rule 10b-5 which requires the showing of each and every one of the following elements, made in connection with the purchase or sale of a security:   1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of the security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. (2011).

### 1.    Securities Fraud

BERMAN not only omitted his dire financial situation and desperate need for cash when he gave his word not to sell the Shares into the market while it was still in its twilight state, but outright lied because it was obvious from his subsequent actions that he intended to sell the Shares as soon as he got them.  Moreover, he knew that he was unable to obtain financing for the Company, yet he induced the Plaintiff to transfer the Shares based on yet another false promise.  BERMAN's blatant lies, as well as the revealing evidence that he always intended to sell the Shares despite his promises, reveals misrepresentations and omissions of material facts that support a prima facie cause of action for securities fraud under Section 10(b) and Rule 10b-5.

### a.  *Material Misrepresentations or Omissions.*

A misrepresentation or omission is "material" if there is a likelihood that the misrepresentation of the fact or disclosure of the omitted fact would have been viewed by a reasonable investor as having altered the "total mix" of information made available. *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)*; SEC v. Todd*, 642 F.3d 1207 (2011).  An omission is material if the party had a duty to make a material disclosure and omitted to do so. *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011).

The representations and omissions of the Defendants are material because Plaintiff would not have transferred the Shares to BERMAN had he known that BERMAN had no intention of keeping his promise of not hitting the volatile market with the Shares, and would do nothing in return for the Shares except try to sell them.  The Shares were not a gift; they came with specific consideration, paid for by BERMAN's broken promises.  BERMAN should not be permitted to benefit from his fraud at the expense of Plaintiff and the Company.

### b.  *Scienter.*

"Scienter… is a subjective inquiry.  It turns on the defendant's actual state of mind. See 8 Louis Loss & Joel Seligman, Securities Regulation 3676 (3d ed.2004).  Thus, although we may consider the objective unreasonableness of the defendant's conduct to raise an inference of scienter, the ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity.  See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) ("There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith."); *Hollinger*, 914 F.2d at 1570 (scienter requires "something more egregious than even `white heart/empty head' good faith." (quoting *Sundstrand*, 553 F.2d at 1045) (internal quotation marks omitted)); *Kaplan v. Rose*, 49 F.3d 1363, 1379-81 (9th Cir.1994) (applying good faith standard); In re Worlds of Wonder Sec. Litig., 3,5 F.3d 1407 (9th Cir.1994) (same); *In re Apple Computer Sec. Litig.,* 88,6 F.2d 1109 (9th Cir.1989) (same); cf. Restatement (Second) of Torts § 526 cmt. d ("The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability ..., but it is evidence from which his lack of honest belief may be inferred." (emphasis added))". *Gebhart v. SEC*, 559 F.3d 1034 (Ninth Cir. 2010).

No clearer case of scienter could be stated than in this matter.  Defendant BERMAN knew that the only way to get Shares was to lie about being able to raise money for the Company and to lie about his intentions of selling the Shares.

### c. *Reliance.*

In a case involving primarily omissions of material fact, reliance is presumed. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972); *Binder v. Gillespie,* 184 F.3d 1059 (1999). Moreover, in this case, the evidence points to the actual reliance by Plaintiff on the specific promises articulated by BERMAN.

### d. *Economic Loss and Loss Causation.*

The loss causation inquiry assesses whether the Plaintiff has shown some causal connection between the fraud and the securities transaction in question. The *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir.1999); *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1486 (9th Cir.1991).

In this case, the Plaintiff would not have transferred the Shares without hearing BERMAN's two specific representations: those supporting consideration for the transfer and those promising not to sell the Shares.

Moreover, under the circumstances of this case, the loss causation and injury to the Plaintiff can be implied from the materiality of the misrepresentations and omissions. *Blackie v. Barrack,* 524 F.2d 891, 907 (Ninth Cir. 1975).

Under Section 17(a) (2) of the Securities Act of 1933, a violation occurs whenever a party "obtains money or property" by means of a prohibited statement or omission to state. Under Commission Rule X-10B-5, 17 C.F.R. 240.10b-5, implementing Section 10 of the Securities Exchange Act of 1934, a violation occurs whenever a party engages in the proscribed activity "in connection with the purchase or sale of any security." *Sackett v. Beaman,* 399 F.2d 884, 891 (Ninth Cir. 1968).

As can be seen from the foregoing, the complaint, on its face, establishes a prima facie case for violation of 10(b) and 10b-5, thus making it likely that Plaintiff will succeed on the merits, pursuant to the Ninth Circuit's "serious questions" test.

### 2. Declaratory Relief

28 U.S.C. Section 2201(a) provides:

- 12 -

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

The second count of the complaint requests declaratory relief under the Federal Declaratory Judgment Act 28 U.S.C. Sections 2201, 2202.  In this case, not only has the Defendant BERMAN committed securities fraud in the issuance of the stock, but Defendant D'ALLEVA has aided and abetted BERMAN in disposing of restrictive stock of an affiliate, who has not disclosed his ownership in filings with the SEC.

Moreover, Section 3(a)(4)(A) of the Securities Exchange Act defines a broker as any person engaging in the business of effecting transactions in securities for others. Section 15(a)(1) of the Act makes it unlawful to effect any transactions in any securities without first registering with the SEC under Section 15(b) of the Act.  Mr. D'ALLEVA, in underwriting the sale of BERMAN's stock, is acting as an illegal and unregistered broker.

Therefore, the Plaintiff has established a prima facie case of declaratory relief, such that he is likely to prevail on the merits, pursuant to the Ninth Circuit's "serious questions" test.

### 3.    Rescission and Restitution

The Plaintiffs also raise a prima facie case of rescission which, under California law, can be accomplished by a showing of either fraud or failure of consideration.  Both are present in this case and supported by the evidence.

The type of "fraud" sufficient to support a unilateral rescission may be either an "actual fraud" (misrepresentation with intent to deceive) or a "constructive fraud" (misleading conduct without fraudulent intent to the prejudice of the other party).  A presumption of constructive fraud may arise where there is inadequate consideration for the rescinding party's performance and especially where the parties are in a confidential relationship.    [CA Civil § 1572 (defining "actual fraud") & § 1573 (defining "constructive fraud")].  The fraud in this case goes above and beyond what is required by the California Statute.

A unilateral rescission can be based on a failure of consideration in three situations (CA Civil § 1689(b)(2),(3) &(4)):

- Where the consideration for the rescinding party's obligation fails, in whole or in part, through the fault of the other party to the contract (CA Civil § 1689(b)(2));

- Where the consideration for the rescinding party's obligation becomes entirely void from any cause (CA Civil § 1689(b)(3)); or

- Where the consideration for the rescinding party's obligation fails in a material respect from any cause before it is rendered (CA Civil § 1689(b)(4)).

As can be seen from the declarations in support of the motion and the verified complaint, consideration for the agreement of Plaintiff to transfer the Shares to BERMAN has completely failed, in that BERMAN not only did not perform, but he lied about the safety of the stock from leaving his own hands.  Therefore, the Plaintiff has made a prima facie case of rescission supported by fraud as well as a total failure of consideration on the part of Defendant BERMAN and the fact that BERMAN is a director of the Company, as is evident from LUSTROS' filings with the SEC, and the fact that there is a restrictive legend on the stock certificate, gives sufficient notice to Defendant D'ALLEVA that the transfer of the Shares is restricted.

As can be seen from the declarations and the verified complaint, Plaintiff has made a sufficient showing of a likelihood they will succeed on the merits.

### 4.    Restrictions May Not Be Removed from the Shares

The Defendants seek removal of legends and to sell the shares.  Unless an exemption is available from registration, the Shares must be registered, as they have been transferred from an affiliate to another person, who is acting as an underwriter.  See *SEC v. Platforms Int. Wireless Corp.,* 617 F.3d 1072 (Ninth Cir. 2010).  In *Platforms,* the District Court imposed a permanent injunction against the defendant, an affiliate who sought to use a third party to inject restricted stock into the free trading market, which is the same thing that is happening in this case.

"Our conclusion that the Rule 144 safe harbor does not apply to these transactions is reinforced by the purposes underlying Securities Act registration.  Of paramount importance is the protection of investors through public disclosure of information necessary to make informed investment decisions. *See* <u>SEC v. Ralston Purina,</u> <u>346 U.S. 119, 124,</u> <u>73 S.Ct. 981,</u> <u>97 L.Ed. 1494 (1953)</u>. "Section 4(1) was intended to exempt only trading transactions between individual investors with relation to securities already issued," not to exempt distributions by issuers.  <u>*SEC v. Chinese Consol. Benevolent Ass'n,*</u> <u>120 F.2d 738, 741 (2d Cir.1941)</u>.  Strictures placed on transactions involving "affiliates" prevent those possessing superior access to information and the power to compel registration from abusing their privileged position to foist unregistered securities on an unwitting public. *See, e.g., M & A West,* 538 F.3d at 1053. Martin's relationship with Intermedia put him in the position to issue large quantities of unregistered Platforms' stock through Intermedia.  He so did. To allow Intermedia's participation in the transaction to shield Martin and Platforms from their Section 5 registration obligations would do violence to the spirit of the Section 4(1) exemption and reward an unsound theory of compliance with Rule 144.  "In view of the objectives and policies underlying the Act, Rule 144 shall not be available to any individual or entity with respect to any transaction which, although in technical compliance with the provisions of the rule, is part of a plan by such individual or entity to distribute or redistribute securities to the public."  Notice of Adoption of Rule 144, 37 Fed.Reg. 591, 595 (Jan. 13, 1972).  The need to protect the public from

- 15 -

unregistered securities sales by issuers and those acting in concert with them counsels us to deny the defendants the protection of Rule 144.

"Ordinarily, failure to qualify for the Rule 144 safe harbor does not automatically prevent a transaction from qualifying for the broader Section 4(1) exemption. In this case however, Intermedia's affiliate status precludes any eligibility for the exemption.  *See* <u>SEC v. Cavanagh,</u> <u>445 F.3d 105, 111</u> n. 12 (2d Cir.2006) (observing that affiliates of an issuer are ordinarily "outside the coverage of Section 4(1)").  *Because Intermedia was an "affiliate" of Platforms at the time the transactions took place, by definition it necessarily also qualified as an "issuer" for the limited purpose of defining underwriters under Section 2(a)(11).  See* 15 U.S.C. § 77b(a)(11) ( "As used in this paragraph the term 'issuer' shall include ... any person under direct or indirect common control with the issuer.").  *Having acquired the securities from an "issuer" with an aim to distribute those securities to the public, Draper and Benefit Consultants are rendered underwriters, making the transaction ineligible for the Section 4(1) exemption.  Id.,* at 618 F.3d 1091 (*emphasis supplied*)."

Rule 144 is a safe harbor exemption that requires that holders of securities in companies that do not report pursuant to the Securities and Exchange Act, such as the Plaintiff, hold their stock for a period of one year before reselling it, has different applications for affiliated and non-affiliated shareholders, and does not apply to underwriters.

Rule 144(d) mandates that its holding period runs from the date the stock was fully paid for.  Since the stock was never fully paid for because the Defendants never raised any money for the Company, Rule 144 is not available to Defendant BERMAN.  It is not available to Defendant D'ALLEVA either, because BERMAN is a director and the stock is restricted from transfer, and D'ALLEVA has notice of that.   Moreover, neither Rule 144 nor Securities Act Section 4(1), the section it was designed to act as a safe harbor for, is available to underwriters, defined by Section 2(a)(11) of the Act as "any person who purchases with a view to distribution, offers or sells for an issuer in connection with a distribution, or participates in any distribution or underwriting".  *Id.,* at 617 F.3d 1091; *SEC v. Kern*, 425 F.3d 143 (2nd Cir. 2005).  In this case, BERMAN is

acting as the issuer and D'ALLEVA is acting as an underwriter of BERMAN's restricted affiliate stock.  No exemption is available to either of them to lift the legends on the certificates.

Since the Defendants have no right to demand the removal of restrictive legends from the stock certificate, this Court should preserve the status quo of the parties and prohibit legend removal during the pendency of this action.  If the Plaintiff would succumb to the pressure of the Defendants in this case and allow the release of restricted stock into the market without a registration statement, it could be in violation of Section 5 of the Securities Act of 1933 (see *Kenler v. Canal National Bank,* 489 F.2d 482 (1st Cir. 1973)).  The legend on the Defendants' certificate provides that the stock cannot be resold without registration or opinion of counsel.  "The obvious purpose behind the restrictive legends requirement of an opinion of counsel is to provide maximum protection to the corporation form potential liability for unlawful sales of securities in violation of Section 5 of the Securities Act."  *Id.* at 489 F.2d 487.

## B.    LIKELIHOOD TO SUFFER IRREPARABLE HARM.

The determination of irreparable harm rests in the sound discretion of the trial Court.  *California ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1308, 1316 (9th Cir.1985).

Irreparable harm has been defined as injury that cannot be compensated monetarily.  Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995).  The "likelihood of irreparable injury" requirement articulated in Winter is satisfied by actual and irreparable injury.  *Alliance for the Wild Rockies v. Cattrell, supra*.  Irreparable harm is often of a permanent nature or at least of long duration. Id. at 22-23.  It has been generally characterized as appreciable harm, i.e., considerable or substantial injury.  Pac. Coast Fed'n of Fishermen's Ass'ns v. Gutierrez, 606 F.Supp.2d 1195, 1210, 1213 (E.D. Cal. 2008) (citing Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782 (9th Cir. 2005)).

Plaintiff declares that LUSTROS' stock is very thinly traded, that any influx of unregistered free trading shares would cripple the market and endanger the quotation of the the securities, thus making the raising of required capital and the continuance of the LUSTROS impossible, resulting in a total loss to Plaintiff of all his investments in LUSTROS, leaving him only a worthless judgment that will never be satisfied.

Stocks traded over the counter, such as LUSTROS, are unlisted and trade by appointment only.  United States Courts have recognized the following factors that contribute to evaluating such a stock:  the history of the Company, the ability of its management, and the nature of business in which the Company is engaged, the past earnings record of the Company, its prospects for future earnings, its balance sheets, the book value of its shares of stock, the market price quotations of the shares, the actual prices of shares traded in the over-the-counter market, the volume of trading in Company stock, and the general conditions of the securities market.  See *Sherr v. Commissioner*, 10 T.C.M. (CCH) 671 (USTC 1951).  Stock quotations in an uncompetitive, thinly traded market are unreliable in assessing an over the counter stock's market price.  *Orkin v. SEC*, 31 F.3d 1056 (11th Cir. 1994).  Manipulation and trade size affects such a thinly traded over the counter stock.  See *Alabama Farm Bureau Mut. Cas.Co. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 616 (5th Cir. 1979).  Stocks traded on an over-the-counter quotation are less liquid than stocks traded on an exchange.  See *Miller v. Thane Intern, Inc.,* 519 F.3d 879, 887-888 (9th Cir. 2007).  It is an economic fact that an over-the-counter stocks' value is affected by a large block of stock dumped upon a market not having enough buyers to purchase it at its quoted price per share will have to be reduced in price in order to be sold.  *See In re Estate of Joslyn*, 500 F.2d 382, 385 (Ninth Cir. 1974).

In the case at hand, the declaration of Plaintiff provides that LUSTROS' stock is thinly traded, and that a large block of stock placed on the market will cripple its stock price and, as a result, its ability to raise capital.  The Court has the inherent power, given

the importance of the Securities Act of 1933 to protect investors, to issue injunctions against the sale of such stock unless it has been registered.  See *SEC v. Guild Films Co.*, 229 F.2d 485 (2nd Cir. 1960).

Moreover, there are no adequate remedies available to the Plaintiff.  The Securities Acts were designed to protect investors and safeguard the integrity of the markets. Plaintiff declares that Defendant is in such dire financial straits that any money judgment Plaintiff may receive will be useless and ineffectual.  This is an element of irreparable injury justifying injunctive relief.  See *Estate of Ferdinand Marcos Human Rights Litigation,* 25 F.3d 1467, 1479-1480 (Ninth Cir. 1994).

The Plaintiff has raised, through documented evidence to which there is no competent evidentiary opposition, serious questions going to the merits of this case, either under the theory of securities fraud, or under the theory of declaratory relief.  The uncontroverted evidence presented in support of the motion supports the inference that the BERMAN lied to obtain his stock, and obtained D'ALLEVA to underwrite the liquidation of restricted unregistered stock in violation of the Securities Act of 1933.  The adage "with friends like this, who needs enemies" comes to mind, as Defendants now seek to sell the Shares they have not earned (not paid for) into LUSTROS' thinly traded, volatile market.

## C.   BALANCE OF EQUITIES AND THE PUBLIC INTEREST.

This irreparable injury to the Plaintiff must be analyzed with the potential damage that could occur to Defendants if they were enjoined and restrained.  The equities in this case are stacked against the Defendants and in favor of the Plaintiff.  To preserve the status quo with a preliminary injunction at this time will cause them no prejudice and no damages.

The balance of the equities clearly tips in favor of the Plaintiff in this case, and the same reasons why the equities tip in favor of the Plaintiff; the preservation of the integrity of the market in the Plaintiff's stock, and the protection of investors from the

sale of unregistered stock issued to illegal underwriters; are the same reasons that protect the public interest, as recognized by Congress when it enacted the Securities and Exchange Act of 1934. 15 U.S.C. §78b, *SEC v. Rind,* 991 F.2d 1486 (1993).

Congress made it clear in enacting the Securities and Exchange Act that "[T]ransactions in securities ... are affected with a national public interest which makes it necessary to provide for regulation and control of such transactions." 15 U.S.C. § 78b, *SEC v. Rind, id.* In this case, where the parties had an agreement, the public interest is served by the prevention of securities law violations and the preservation of the integrity of the Plaintiff's market and resultant protection of innocent investors.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff respectfully requests that this Court grant a preliminary injunction pending the outcome of this case, to preserve the status quo.


DATED: July 2, 2013

          */s/ Kenneth G. Eade*

          KENNETH G. EADE (SBN 93774)
          Attorney for Plaintiff,
          ZIRK DE MAISON

*Zirk de Maison vs. Berman, et al.*
USDC – CA Central Dist., Case No. EDCV 13-1165 JGB (DTBx)

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action, my business address is 6399 Wilshire Blvd., Suite 507, Los Angeles, California 90048.

On July 2, 2013, I served the foregoing documents described as:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF ZIRK DE MAISON; MEMORANDUM OF POINTS AND AUTHORITIES; PROPOSED ORDER**

on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

See attached Service List.

☒     BY U.S. PRIORITY MAIL:  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with this firms practice for collecting and processing correspondence for mailing.  On the same day that correspondence or other service document is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage thereon fully prepaid.

☒     BY ELECTRONIC TRANSMISSION – I transmitted a PDF version of this document by electronic mail to the party(s) identified on the above service list using the e-mail address(es) indicated.

Executed this 2nd day of July 2013, at Los Angeles, California 90048.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____*/s/ Nichelle Guzmán*_____
NICHELLE GUZMAN

PROOF OF SERVICE

*Zirk de Maison vs. Berman, et al.*
USDC – CA Central Dist., Case No. EDCV 13-1165 JGB (DTBx)

1

2

## SERVICE LIST

| | |
|---|---|
| <u>*Defendant*</u> RICHARD BERMAN<br><br>Richard Berman<br>420 Lexington Avenue, Suite 350<br>New York, New York 10170 | Tel:  212-584-4180<br>Fax:  646-514-7787<br>Email:  richardjberman@gmail.com |
| <u>*Defendant*</u> DOMINICK D'ALLEVA<br><br><br>Dominick D'Alleva<br>845 United Nations Plaza, Apt 48E<br>New York, NY 10017 | Tel:  212-529-7999<br>Email:  info@swaylounge.com |
| <u>*Counsel for Defendant AMERICAN<br>REGISTRAR & TRANSFER CO.*</u><br><br>Daniel Jackson, Esq.<br>2157 Lincoln Street<br>Salt Lake City, UT  84106 | Tel.  801-596-8338<br>Email:  djackson@danjacksonlaw.com |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE